# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**COPY** 

Civil Action No.    06-cv-00759-LTB-CBS

(To be supplied by the court)

MICHAEL WHITINGTON       , Plaintiff,

v.

DON LAWSON ,

AL ESTEP ,

,

**JURY TRIAL DEMAND**

SGT. HARDING ,

SGT. OLSEN ,

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY - 1 2009

GREGORY C. LANGHAM
CLERK

C/O BARNS ,

LT. JOHN CORDOVA ,

LT. ADELMAN , Defendant(s).

(List each named defendant on a separate line.)

_____

## SECOND AMENDED PRISONER COMPLAINT AND SUPPLEMENT

_____

(Rev. 1/30/07)

DEFENDANTS CONT.

SGT. KAUFFMAN,

LT. LUCERO-CANNON,

SGT. HUFF,

Aristedes Zavaras,

## A. PARTIES

1. <u>Michael Whitington #98082 SCF Box 6000 Sterling, Co.80751</u>
   (Plaintiff's name, prisoner identification number, and complete mailing address)

2. _____
   (Name, title, and address of first defendant)

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? <u>X</u> Yes ___ No (CHECK ONE). Briefly explain your answer:

   He was the Director of the CDOC

3. <u>Al Estep, Warden at LCF, 49030 Hwy. 71 Limon,  Co. 80826</u>
   (Name, title, and address of second defendant)

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? <u>X</u> Yes ___ No (CHECK ONE). Briefly explain your answer:

   Warden for the CDOC

4. _____
   (Name, title, and address of third defendant)

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? <u>x</u> Yes ___ No (CHECK ONE). Briefly explain your answer:

   Was the CDOC's Step III Grievance Officer

(If you are suing more than three defendants, use extra paper to provide the information requested above for each additional defendant. The information about additional defendants should be labeled "A. PARTIES.")

(Rev. 1/30/07)                    2

A. PARTIES CONT.

5. Sgt. Olsen, Correctional Officer, 49030 Hwy. 71, Limon,
Co. 80826. Olsen was a CDOC correctional officer and was acting
under the colors of the law.

6. Sgt. Huff, correctional Officer, 49030 Hwy. 71, Limon, Co.
80826. Huff was a CDOC correctional officer and was acting under
the colors of the law.

7. C/o Barns, Correctional  Officer, 49030 Hwy 71, Limon, Co.
80826. Barnes was a CDOC correctional officer and was acting under
the colors of the law.

8. Lt. John Cordova, CDOC Case manager, P.O. Box 1000 Fort Lyon,
Co. 81038. Cordova was a CDOC Case manager and was acting under
the colors of the law.

9. Lt. Adelman, CDOC Case manager, 49030 Hwy. 71, Limon, Co.80826
Adelman was a CDOC Case manager and was acting under the colors of
the law.

10. Sgt. Kauffman, CDOC Correctional officer, P.O. Box 3, Pueblo,
Co. 81003. Kauffman was a CDOC correctioal officer and was acting
under the colors of the law.

11. Lt. Lucero-Cannon, CDOC Case Manager, P.O. Box 3, Pueblo, Co.
81003. Lucero-Cannon was a CDOC Case Manager and was acting under
the colors of the law.

12. Sgt. Harding, CDOC Correctional Officer, 49030 Hwy. 71, Limon,
Co. 80826. Harding was a correctional officer and was acting under
the colors of the law.

14. Aristedes Zavaras, Executive Dir. of CDOC, 2862 S Circle
Dr. Colorado Springs,Co. 80906. Zavaras is the Ececutive Dir.
of the CDOC.and was acting under the colors of the laws.

15. Don Lawson, Medical staff, P.O. Box 3, Pueblo, Co. 81003. Lawson
was medical staff employed at San Carlos Correctional Facility.

## B. JURISDICTION

1. I assert jurisdiction over my civil rights claim(s) pursuant to: (check one if applicable)

    __x__   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

    _____   28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2. I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

    U.S.C. §1362 Supplemental Jurisdiction


## C. NATURE OF THE CASE

BRIEFLY state the background of your case. If more space is needed to describe the nature of the case, use extra paper to complete this section. The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

1. The plaintiff is an indigents state prisoner confined in the Colorado Department of Coreections.

2. During 2005,while the plaintiff was housed at Limon Correctional Facility(LCF), he incured debt with the CDOC for legal postage and copies to prosecute post conviction claims, state habeus claims and civil rights complaints.

3. Due to these Debts the Defendants would not give the plaintiff hygiene items claiming that it was his choice to incure debt for litigation cost or to purchase hygiene items.

4. The plaintiff additionally had incured debts with the state of Colorado for criminal restitution and with the CDOC for medical care that was deducted from all deposites made on his inmate account.

5. The CDOC policy mandated that the plaintiff's inmate account be levied each month by 90%. The Defendants and CDOC officials levied the plaintiffs inmate account by 90% to 100% every month.

6. Once the CDOC officials deducted all of the plaintiffs funds prior to him being allowed to purchase hygiene items, the defendants denied the plaintiff hygiene items stating that he received inmate pay.

7. The plaintiff incured serous and permanent injuries from the denial of hygiene items.

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1.   Claim One:  Defendants denial of hygiene items to plaintiff
was cruel and unusual punishment, violating the Eighth Amendment.
        Supporting Facts:

8. The plaintiff incorporates all claims made in the Nature of The Case into Claim 1.

9. On June 1st, 2005 the plaintiff went to case manager(C/M) Adelman's office and explained to Ms. Adelman that he had no hygiene items and requested hygiene items. Ms. Adelman reviewed the plaintiff's account on her computor and she stated you do not qualify for indigent status because he received inmate pay. The plaintiff explained to Ms. Adelman that hte inmate pay that he was given was deducted for legal copies and postage. C/M Adelman refused to give the plaintiff any hygiene items.

10. The plaintiff's pay for May of 2005 was deducted prior to the plaintiff being allowed to purchase his monthly hygiene items.

11. The plaintiff was only given $1.28 to purchase his monthly supply of hygiene items with for June of 2005.

12. On June 10th, 2005 the plaintiff requested hygiene items from Sgt. Olsen. Sgt. olsen stated that he was not going to give the plaintiff any hyygiene items.

13. On June 24, 2005 the plaintiff requested hygiene from Sgt. Harding and Sgt. Harding stated that she would not give the plain tiff any hygiene items.

14. On June 29, 2005 the plaintiff was given $.17 by CDOC officials.

15. On July 1, 2005 the plaintiff went to unit 4's office to turn in two grievances and to request a miscellaneous withdraw slip. Sgt. Olsen asked the plaintiff ifhe ever had any money on his account with all of the miscellaneous withdraw slips he turned in. The plaintiff told Sgt. Olsen that he did not ever have any money because of his legal work.

16. Sgt. olsen knew that hte plaintiff had no money to purchase hygiene items.

17. The plaintiff was given $2.26 to purchase hygiene items with

(Rev. 1/30/07)                    4

for the month of July , 2005. On July 11, 2005 CDOC officials
Took the $2.26 back prior to the plaintiff being allowed to
purchase hygiene items and the plaintiff had no monies to
purchase hygien items for July.

18. On July 8, 2005 the plaintiff sent a written request to
C/M Adelman requesting an application for hygiene items. On July
11, 2005 the plaintiff was given an indigent request form by C/M
Adelman. The plaintiff turned in the request and on July 12, 2005
C/M Adelman called the plaintiff to her office and denied the plan-
tiff's request for hygiene items stating that he had received
state pay. The plaintiff told her that he did not receive pay
that it was taken beck for legal cost. She stated that was the rules.

19. On July 15, 2005 the plaintiff asked C/O Barnes if he could
have some hygiene items, C/O Barnes stated no. Later that day the
plaintiff asked Sgt. Olsen. if he could have some hygiene items,
Sgt. Olsen stated no and that if you would stoquit spending all
of your money on postage you would have money to buy hgyiene.

20 On July 26, 2005 the plaintiff asked C/O Barns and Olsen for
hygiene items and they said no.

21. In July of 20005 the plaintiff requested hygiene items from
Sgt. Huff and Sgt. Harding while they were in the unit office and
they said no.

22. In August the plaintiff was given $2.47 for state pay. On Augst
5, 2005 the plaintiff requested hgyiene items from Adelman on
August 9, 2005 Adelman denied the plaintiff's request for hygiene
items. On August 9, 2005 the plaintiff filed a step I grievance
for the denial of hygiene items.  On August 10, 2005 CDOC officials
took the $2.47 of pay back prior to the plaintiff being able to
purchase hygiene items.

23. On August 10, 2005 the plaintiff seen the dentist because
his teeth were hurting and his gumms were bleeding. The plaintiff
told the dentist that he had no toothpaste. The dentist told
his assistant to set an appointment to clean the plaintiff's teeth
and to further examine them. The dentist told the plaintiff to
clean his teeth with a washcloth the best that he could.

24. The plaintiff  was transfered from LCF to Fort Lyon Correction-
al Facility(FLCF) on August 24, 2005 and the plaintiff's dentist
appointment was canceled.

25. The plaintiff was given $2.19 in state pay for September 2005
and ordered one tooth paste, one soap and one tooth brush from
the canteen department.

26. Prior to the plaintiff receiving hygiene items the plaintiff
requested hygiene items from C/M Cordova. Cordova stated that
the plaintiffdid only have $.10 on his account in the last 30
days but that he was not qualified for hygiene items because
he received pay.

The plaintiff told Cordova that he did not receive pay that it was taken back before he could buy hygiene items. Cordova still denied the plaintiff hygiene items.

27. The plaintiff put in a request to see the dentist onSeptember 6, 2005.

28. The plaintiff had not had any soap or tooth paste for approximately four months, from May 12, 2005 until September 15, 2005. The plaintiff repaetedly requested hygiene From defendants Adelman, Olsen, Harding, Huff, Barns and Cordova and the defendants contiuely denied the plaintiff hygiene itemes  when they knew he did not have any hygiene items or any money to purchase them.

29. The plaintiff's hygiene items were depleted around October 1, 2005. The plaintiff was given $1.02 in state pay on October 5, 2005 then on October 6, 2005 CDOC officials took the $1.02 back. The plaintiff had no hygine for the month of October.

30. On October 18, 2005 The plaintiff seen Cordova and requested hygiene items from him. Cordova denied the plaintiff's request after he reviewed his account statement stating that he received pay. Cordova mentioned the plaintiff's legal postage and copy debits  as why he did not heve any money to purchase hygiene.

31. During this time the plaintiff's gums were swelling up, bleeding and in consent pain. Around October 25, 2005 the palaintiff's gums were swollen, infected and several of the plaintiff's teeth were loose and were in sever, and consent pain. The plaintiff pulled the loose tooth out that was infected.

32. The medical Department sent the plaintiff's request for dental treatment back stating that he request was duplicate and not to send any more requests for treatment.

33. Around October 27,2005 the plaintiff wrote Warden Estep and informed him that he did not have any hygiene items , had not had any hygiene items for a long time and that his staff were refusing him hygine items. The plaintiff request hygiene items from Estep. Warden Estep refused to give the plaintiff any hygiene items or direct his staff to give the plaintiff hygiene items.

34. On November 1, 2005 the plaintiff requested to see the doctor to obtain antibiotics for his infected gums.

35. The plaintiff was given $1.26 for state on November 4, 2005. The plaintiff ordered hygiene items but received none for the month of November.

36. The plaintiff requested hygiene items from Cordova on November 8, 2005, Cordova stated "you know you don't qualify".

37. On November 10, 2005 the plaintiff was in receiving awaiting transfer to another prison, Cordova came to receiving and brought the plaintiff and indigent request form. The plaintiff filled out

the form and Cordova took the form and left. Cordova returned later
with a denial for hygiene items stating that the plaintiff re-
ceived $1.26 in pay to purchase hygiene items.

38. The plaintff had no hygiene items for approximately 40 days
From October 1, 2005 until November 10, 2005. Cordova knew the
plaintiff had no hygiene items and no money to purchase them.
Cordova and Estep both had the authority to give the plaintiff hygiene
items.

39. The Plaintiff Was without any hygiene items From November 17,
2005 until December 1, 2005.(13 days) The plaintiff received
hygiene items in minimal supply while he was housed at CDOC trans-
port unit awaiting transfer to Kit Carson Correctional Center(KCCC).

40. On December 1, 2005 Captin Wilkenson supplied the plaintiff
with a hygiene pack containing one soap, one razor, one tooth paste,
one tooth brush and two stamped envelopes. Wilkenson debited the
plaintiff's account $3.27 for the hygiene kit.

41. The plaintff received $58.04 on December 6, 2005. On December
8, 2005 the plaintiff ordered hygiene items from the canteen depart-
ment. On December 10, 2005 theplaintff depleted his hygiene items
and was without hygiene until December 15 when he received his
hygiene items from the canteen department.

42. ON December 27, 2005 the plaintiff was seen by thedentist and the
denist cut the infection out of the inmate gums, scraped the in-
fection from around two other teeth and then stitched theplaintiff's
gums back together.

43. On about March 10, 2006 the plaintiff depleted his tooth paste.
On March  21, 2006 the plaintiff was given $2.84 in state pay. The
plaintiff ordered hygiene items from the canteen department. The
plaintiff recieved hygiene items from the canteen department on
March 30, 2006. The plaintiff was without hygiene items from March
10, 2005 until March 30, 2006.

44. The plaintiff received no pay for April, 2006. Around April
20, 2006 the plaintiff depleted his hygiene items.

45. The plaintiff was not given any Pay for the month of May.

46. On June 2, 2006 the plaintiff was transfered from KCCC TO
Sterling Correctional Facility(SCF).

47. Around June 6, 2005 the plaintiff  requested hygiene items from
C/M Schnider. On June 10, 2006 the plaintiff wrote a second re-
quest for hygiene items to C/M Schnider requesting hygine items.
Schnider did not supply the plaintiff with any hygiene.

48. On June 18, 2006 the plaintiff went to C/M Mannings office and
requested hygiene items. Manning determined tha that the plaintiff
received no pay in June and gave the plaintiff hygine items that
included two bars of soap and two tubes of tooth paste.

49. The plaintiff had no hygiene from about April 20, 2006 until June 19, 2006.

50. The plaintiff had no money to purchase hygiene for June and wasonly given $.50 in state pay.

51. The plaintiff received $2.27 in state pay for July and ordered and received two tubes of tooth paste.

52. The plaintiff was transfered to San Carlos Correctional Facility (SCCF) on August 2, 2006. On August 3, 2006 the plaintif received $2.78 in state pay. The plintff ran out of soap on August 8,2006. on August 8, 2006 ordered hygine itenms and received them on August 14, 2006. The plaintiff was without soap for about six days prior to receiving canteen.

53. During the first part of August the plaintiff's gums were swollen and the plaintiff requested medical treatment from the dentist.

54. Around August 17, 2006 the plaintiff developed an abscess on his arm and reported it to the nurse. On August 21, 2006 the plain-tiff was taken to the State Hospital and had serjury on his harm.

55. On August 25, 2006 the plaintiff ren out of soap.

56. On September the plaintiff was seen by the dentist for his swollen gums. The dentist cleaned the plaintffs teeth and stated that there was a lot of build up on his teeth that caused the swelling. (September 13)

57. The plaintiff ran out of tooth paste around September 15, 2006

58. The plaintiff was not given any money to purchase hygiene items for the month of September, 2006. The plaintiff requested hygiene items from the unit 4 officer. The officer stated he did not have any hygiene items and did not control whether other staff brought suppies to the unit.

59. Around September 14, 2006 the plaintiff was taken to the State Hospital to have surgery on a second abscess on his chest.

60. On September 22, 2006 the plaintiff requested hygiene items from C/M Lucero-Cannon, she refused to give the plaintiff any hygiene items stating that he had received pay and was required to purchase his own hygiene items. On September 25, 2006 the plaintiff developed a third abscess on his Eye area. On September 26, 2005 the plaintiff seen the doctor and the doctor stated that the abscess on his was very serious and that the infection could quickly spread to his brain and kill him. On September 29, 2006 the doctor gave the plainiff a shot of Penicilen. On September 30 the doctor came to the unit and examined the plaintiff's eye.

61. Around October 3, 2006 the plaintiff requested hygiene items

from Sgt. Kauffman . Kauffman first stated that he did not have any hygiene items, then changed his claim to that the plaintiff had to be indigent per A.R. 850-14 and that he had to get hygiene from his case manager. Kauffman refussed to give the plaintiff hygiene items.

62. On October 2, 2006 the plaintiff was again treated by the doctor for his abscess around his eye.

63. On October 5, 2006 the plaintiff was again taken back to the State Hospital. The Doctor stated that the infections on the plaintiff's skin was spreading, the doctor told the plaintiff that he needed to was well to stop the spreading infection. The plaintiff told the doctor that he did not have any soap. The doctor ordered for the plaintiff to recive anti-bactirial soap.

64. The plaintiff was given $1.05 for state pay and he ordered a bar of soap and recived it on October 16, 2006. The plaintiff was out of soap about 40 days prior to receiving soap on October 16.

65. On October 17 the plaintiff was given $2.10 for state pay and ordered hygiene and received one tooth paste and two soaps on October 23, 2006.

66. On November 6, 2006 the plaintiff received $.66 for state pay and ordered one bar of soap for the month of November that he received on November 14. Around November 17, 2006 the plaintiff ran out of tooth paste and around November 25 the plaintiff ran out of soap.

67. around December 4, 2006 the plaintiff requested hygiene from Lucero-Cannon. Lucero-Cannon denied the plaintiff's request for hygiene stating that he receives state pay.

68. The plaintiff received $3.56 for pay in December and ordere hygiene items that he received on December 18, 2006. The plaintiff was out of soap for about 23 days and tooth paste for 30 days.

69. During this time the plaintiff continually requested antibactirial soap that was ordered by doctors from the State Hospital. Don Lawson refused to order or give the plaintiff the anti-bactirial soap or any soap at all. The plaintiff never received soap ordere by the State Hospital Doctor.

70. On December 30, 2006 the plaintiff developed his fourth abscess and his second abscess around his eye area. On January 2, 2007 the plaintiff was seen by the doctor for his abscess on his left eye area.

71. On January 8, 2007 the plaintiff received $2. 63 for state pa and received hygiene items on January 17, 2007. The plaintiff wasout of soap for for about seven days and out of tooth paste for about eight days prior to receiving hygiene items.

72. On Febuary 12, 2007 the plaintiff received $.63 for state pay and only received one bar of soap  for the month of Febuary. The plaintiff was out of soap for about twelve days prior to revieving hisone bar of soap and the plaintiff continued to be out of tooth paste.

73. Don Lawson called the State Hospital and TAlked to a infectious decease doctor who told Lawson that the plaintiff probable had contracted Methicillin Resistant Staphylococcus Aureus(MRSA). This was around the first part of January.

74. The plaintiff was transfered  back to Sterling(SCF) in mid Febuary. On March 1,2006 the plaintiff was sent to madical on an emergency visit to treat two more abscesses that the plaintiff developed on his face area. The doctor stated that he had MRSA and prescribed three differect anti-biotics. The doctor told the plaintiff that he needed to wash good several times of day and to wash his hands many times throughout hte day. The plaintiff  was treated at medical daily for 10 days and was continuallly treated by medical until the end of April 2007 to contain the MRSA that the plaintiff had contracted.

75. Defendants Lucero-Cannon, Kauffman and Don Lawson knew the plaintiff had no hygiene items, knew he had no money to purchase any and they all had the authority to give theplaintiff hygiene items. The defendants knew that the lack of hygiene would cause or had the potential to cause serious harm to the plaintiff. Once the plaintiff contracted MRSA and had been treated at SCCF for gum infection the defendants still refused to give the plaintiff hygine items for a decease that was caused and continued from the lack of basic hygiene items.These defendants were deliberately indifferent to the health and safety of the palintiff nand were the direct cause of him contracting MRSA and the subsequent harm that he was caused.

76.Defendants Cordova, Olsen, Huff, Barnes, Harding, Estep and Schnider  all had authority to give the plaintiff hygiene items and knew that hte denial of hygiene items would cause him serious harm. The defendants were the cause of all harm he wascaused from the denial of hygiene items and they were dilibertly indifferent to his health and safety.

77. Thomas Bullard was the step III greivance  oficer deligated to review and investigate and then recomend remedies to the CDOC. Bullard had received the plaintiffs step III Greivance around October of 2005 and was in possession of the allegations during the time the plaintiff was without hygiene items. Bullard refused to investigate the greivance allegations. The plaintiff was without hygiene items and experienced serious harm during and after the time Bullard had received the greivance. Bullard had the authority bring the plaintiff's deprivations to the attention of CDOC officials and he did not investigate the allegations or recomend or bring any of the facts to the CDOC. Bullard is responsible for the plain-tiff's serious harm and was deliberately indiferent to the plain-tiff's health ans safety. Bullard knew that the plaintiff would

experience serious harm from the continued deprivation of hygiene items.

78. All of the named defendants are required to Administrative Reglulation with in the CDOC. The defendants ignored A.R.'s 850-11, 850-14, and 1450-01. The defendants knew that unsanitary conditions in an institutional setting were hazerdous to the inmates as well as staff. The defendants were trained in the importance of sanitary conditions in CDOC facilities. The DEfendants not only had a duty under their own policies to correct or report any unsanitary conditions but the CDOC officials knew sanitary conditons were of such importance that they made sanitary violations by inmate a violation of the code of penial discipline that carried disciplinary sanctions for not takin showers, not keeping their bodies and hair clean.(ie; A.R. 150-01.

79. The plaintiff sues all of the named defendants in their individual capacity and sues Artistedes Zavaras in his official capacity. The plaintiff requestes a jury trial on all of the claims against all of the named defendants. Artistedes Zavaras is sued in his individual capacity as well.

80. The plaintiff wrote the CDOC Executive Director Zavaras around April of 2007 and explained all of the policies that were causing him and many other inmates to be deficiant of basic hygiene items and explained to him that hte plaintiff had no hygiene items and had been without hygiene items for a long period of time. The plaintiff requested that Zavaras direct his staff to give him hygiene items. Zavaras never responded or suppplied the plaintiff with any hygiene items.

81. Around June 2007 The American Civil Liberties Union wrote Zavaras in behafe of the plaintiff requesting that he review his idigent policies and that many inmates were being deprived of hygiene items due to his policies. Zavaras refuses to supply the plaintiff with any hygiene items after this request by the ACLU or change the policies that were depriving the plaintiff of hygiene items.

2.   Claim Two:  THE CDOC'S INDIGENT, INMATE PAY, INMATE BANKING, HYGIENE PURCHASING, LEGAL COPIES AND POSTAGE , AND MEDICAL COST POLICIES FORCE THE PLAINTIFF TO CHOSE BETWEEN ACCESSING THE COURTS, ACCESSING MEDICAL CARE OR RECIEVING AMPLE HYGIENE SUPPLIES EACH MONTH. Supporting Facts:

82. The plaintiff incorporates the claims and statements from the nature of the case and from claim one into claim two.

83. CDOC inmate banking policies directs staff members to deduct criminal conviction restitution, Medical care, Court filing fee's, legal copies and postage and miscellaneous deductions from the plaintiff's account each month at a rate of 90% to 100%. The CDOC officials deduct 20% for restitution, mandated by state law, deducts 50% of any debt owed the CDOC for medical care, legal copies and postage or other charges. Then the CDOC officials deduct anoter 20% for court filing fee's for a total of 90% monthly deduction from the plaintiff's state pay.

84. The CDOC officials pay the plaintiff either $.60 a day or $.30 a day for a total of no more than 23 days amonth. The plaintiff's pay adverages either $12.60 or $6.30 a month. This pay amount is prior to the CDOC deductions.

85. The plaintiff is required by CDOC policy to purchase his own hygiene supplies from the CDOC canteen department from funds on the plaintiff's account.

86. The CDOC officials charges $.41 for a bar of soap, $1.03 for a tube of tooth paste, $.95 for a 10 pack of razors and $.38 for a tooth brush. The plaintiff needs two tubes of tooth paste, three bars of soap for a month and a half a pack of razors and tooth brush every other month for a total of $3.93 a month at minimum to have an ample supply.

87. The CDOC officials 90% deductions fromthe plaintiff's pay and/ or deposits for medical care costs, restitution from his criminal convictions, court filing fee's and legal postage and copies.

88. The plaintiff incured debt for Post-conviction proceedings, Habeous Corpus filing, Conditions of confinement complaints. The plaintiff's litigation debt was protected by state and federal law. The plaintiff's litigation costs were a part of normal lit-igation costs that the plaintiff could not have forgone. The plai-tiff is required to follow all procedural rules in state and federal court. The plaintiff is required to supply the correct amount of copies to the court, required to make adequate pleadings and to respond to courts orders and the oposing parties responses, with adequate plaedings to prevail on his claims.

89.The plaintiff's amended complaint filed here today will cost approximately $55.25 for copies and $5 for postage for a total of $60.25. This one action with no other motions or filings would take nine months to pay off. This would leave the plaintiff with $1.26 for hygiene items each month for nine mopnths. This

would leave the plaintiff with inadequate hygiene items for nine
months. This example is unrealistic due to the fact if the
plaintiff is to prevail on his claims he will have to file many
more documents and incure much more debt before his civil right
claims are resolved.

90. The plaintiff's very basic litigation created a debt that
would have taken more that a year to pay off. The plaintiff's
foregoning some litigation inorder to obtain hygiene items would
have been fruitless because once the plaintiff incured debt for
litigation cost the CDOC officials would have made 90% deductions
against his account for well over a year even if the plaintiff
withdrew from all litigation and had not filed any more documents.
The manner in which CDOC officials apply their policies when the
plaintiff filed one state claim and incured a $50 debt and he
withdrew and filed nothing more he would receive $1.26 for pay
for the next eight months. This would be an eight month deprivation
of adequate hygiene items that would put the plaintiff at risk
of serious harm.

91. Theplaintiff had no way to evade the normal cost of litigation
that CDOC charges for copies, the cost of postage, and all of
the court requirements associated with filing a claim in state
or federal court.

92. The plaintiff has a normal amount of litigation thatis required
each month from court orders, time restraints set by law and
normal course to prosecute his claims. When the plaintiff incures
a debt from litigation of medical care CDOC officials delay
appling the  debt to the plaintiff's negative account balance
and wait until the plaintiff's pay is placed on his account and
the they take 20% for restitution, 50% for previous debt on his
account, 20% for court filing fee and then they process debt
incured from the previous month. This leaves the plaintiff with
a $00.00 balance to order hygiene items. Many month CDOC officials
deducted the 10% that was remainding on the plaintiff's account
for hygiene items prior to him being allowed to order hygiene items
from the canteen department.

94. The manner in which CDOC officials apply  their policies
has and is causing the plaintiff to chose to file state and fed-
eral protected litigation or have hygiene items in ample supply
and be free from cruel and unusual punishment. The CDOC gives
the plaintiff no  choice but to chose to litigate a protected
claim to the court and have no hygien items for a year at a
time or forgo accessing the courts and medical care inorder
to have ample hygiene items each month.

95.The plaintiff has gone without hygiene items for 466 days
out of 700 days. These deprivation of hygieneitems lasted from
several day at a time to four months at a time.

96. The deprivation of hygiene items by the defendants have cause
the plaintiff mental and serious and, permenant injury. The

plaintiff  developed rashes and bumpes on his face from not being
able to wash with soap and dirt and bactiria collecting in his
facial hair from not being able to shave. The plaintiff developed
gum infection that caused mutlible occasions of swelling and
weeks of constant and sever pain that required gum sergery. This
also resulted in the permanet loss of his front tooth. The  plain-
tiff contracted MRSA that required multible sergeries and six
months of treatment to cure. The plaintiff lost weight from not
being able to eat while his mouth was swollen and infected. The
plaintiff had to walk around dirty and stinking causing substantial
humiliation for long periods of time. The plaintiff contracted
MRSA that spread to his face and was so close to his eye that it
cause his eye to swell shut and put the plaintiff in real risk
of death.

97. The plaintiff's injuries were the direct cause and cause of
his extended injuries from the long term deprivation of basic hygiene
items. That was directly caused by the defendants.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _x_ Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   Whitnton v. Mochetti Whitinton v. Sokol

2. Docket number and court name:

   07-00663 U.S. Dist. 06-01245

3. Claims raised in prior lawsuit:

   Retaliation for excersicing 1st amend, Discrimination(ADA), 8th Amend medical; Excessive force.

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   Still pending x2

5. If the prior lawsuit was dismissed, when was it dismissed and why?

6. Result(s) of any appeal in the prior lawsuit:

   Reversed and remanded x2 in Whitngton

   v. Ortiz 06-00759

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

   _x_ Yes ___ No (CHECK ONE).

2. Did you exhaust available administrative remedies? _x_ Yes ___ No (CHECK ONE).

(Rev. 1/30/07)                                        7

# G. REQUEST FOR RELIEF

State the relief you are requesting.  If you need more space to complete this section, use extra paper.  The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

Declare that the acts and ommissons for the defendants violated the plaintiff's constitutional rights to be free of cruel and unusual punishment.

Declare the the CDOC's policies force the plaintiff to choose between accessing medical care and redressing the courts or having hygiene items each minth in amply supply.

Enter permanent injunction against Aristedes Zavaras and/or his agents ordering them to supply the plaintiff with ample saop, toothpaste, tooothbrush and razors or require the defendants to supply the plaintiff with $5.00 a month to purchase hygiene items. Order the denfendants not to levy any debt against the $5.00 hygiene allowancs for thirty days from the date the allowance was given. Order the Defendants, CDOC or it's agents to change their indigent policies so that the plaintiff does not have to choose between medical care and redressing the court or having hygiene items.

Enter Judgement in favor of the Plaintiff for nominal, compensatory, and punitive damages allowed by law, against each DEfendant, jointly and severally.
Order such additional relief that this court deems just.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on _4/27/09_
(Date)

_____
(Prisoner's Original Signature)